UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Kidd, Donna McKnight, and Barbara Johnson, *individually and on behalf of all persons similarly situated*,<br><br>*Plaintiffs*,<br><br>v.<br><br>River Heights Capital, LLC, David Kennedy Bifulco, and Pollack & Rosen, P.A.,<br><br>*Defendants*. | **No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

### I. PRELIMINARY STATEMENT

1. This is a consumer class action against a subprime debt buyer, Defendant River Heights Capital, and its collection enforcement attorney, Defendant David Kennedy Bifulco and his law firm Defendant Pollack & Rosen, P.A. (the "P&R Defendants"), whose business model is to purchase old and unsubstantiated default judgments and then use writs of execution to collect against low-income consumers by freezing or garnishing their bank accounts, all without reviewing the validity of those debts, being able to prove the validity of those debts, or providing notice to the consumers prior to forcibly seizing funds in their bank accounts.

2. Michael Kidd was working hard to save money for his daughter's college education when, out of nowhere, a writ of execution was served to garnish his bank account and freeze his life savings. The execution was filed by a law firm

that he had never heard of, on behalf of a company that he had never heard of, for a debt that he had never heard of, that had been reduced to a default judgment against him nearly twenty years prior that he had never heard of, by another company that he had never heard of, in a court case in which he was never served.

3. The same thing happened to Donna McKnight, Barbara Johnson, and class members, all of whom had their limited personal property or property interest in their homes jeopardized due to ancient and unvalidated default judgments purchased and executed on by Defendant River Heights Capital through the P&R Defendants as its attorneys without any notice, let alone legally required notice.

4. Defendants' formula for extracting money from unknowing Pennsylvania consumers is simple and unconscionable. First, Defendant River Heights Capital purchases old default judgments for allegedly unpaid consumer debts from another debt buyer, Unifund CCR Partners ("Unifund"), which has been holding these default judgment debts for over a decade without making any effort to collect on them. Then, through Defendant Bifulco and his law firm Defendant Pollack & Rosen, P.A., Defendant River Heights Capital files writs of execution in the long defunct state court actions to immediately garnish Plaintiffs' and class members' bank accounts without any notice whatsoever.

5. When their banks told them why their accounts had been subject to garnishment, Plaintiffs did not recognize the name of the debt buyer that obtained the original judgment against them, Unifund; the name of the judgment buyer, Defendant River Heights Capital; or the name of its attorney, Defendant Bifulco.

They did not understand why or how or even when they had been sued, or what initial steps they must take to stop the garnishment.

6. Defendant River Heights Capital acquires virtually no documentation in connection with these judgments: not the underlying agreements and other documentation from the original creditor proving the alleged debt; not the verified complaints brought to collect the alleged debt; not the affidavits of service in the litigation brought to enforce those agreements; and, not even documentation sufficient to substantiate the debts' chain of title either prior to litigation or after default judgment.

7. Moreover, the judgments purchased by Defendant River Heights Capital for the purpose of forcible collection in Pennsylvania were largely obtained between 2004 and 2009, at the height of the subprime lending crisis characterized by widespread consumer law violations. Yet, Defendants seek to collect on the debts reduced to judgments without any meaningful review as to their legality.

8. Plaintiffs and proposed class representatives Michael Kidd, Donna McKnight, and Barbara Johnson ("Plaintiffs") bring this action on behalf of themselves and several classes of similarly situated individuals.

9. Plaintiffs allege that Defendants' conduct violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), the Pennsylvania Fair Credit Extension and Uniformity Act, 73 P.S. §§ 2270 *et seq.* ("FCEUA"), and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§

201 *et seq.*, ("UTPCPL"). They bring this action to seek redress for themselves and hundreds of similarly situated class members victimized by Defendants' conduct.

## II. Jurisdiction and Venue

10. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). Declaratory relief is available pursuant to 28 U.S.C. §§ 2201(a) and 2202.

11. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because it is the district where a substantial part of the events giving rise to Plaintiffs' claims occurred.

## III. Parties

12. Plaintiff Michael Kidd ("Mr. Kidd") is a natural person who resides in Philadelphia, Pennsylvania.

13. Plaintiff Donna McKnight ("Ms. McKnight") is a natural person who resides in Philadelphia, Pennsylvania.

14. Plaintiff Barbara Johnson ("Ms. Johnson") is a natural person who resides in Philadelphia, Pennsylvania.

15. Defendant River Heights Capital, LLC is a limited liability company incorporated in Wyoming with its principal place of business in California. It registered to do business in Pennsylvania as a foreign limited liability company in October 2024.

16. Defendant David Kennedy Bifulco is a natural person who is a barred attorney in the Commonwealth of Pennsylvania where he lives and practices. He is

the attorney of record in the cases where Defendant River Heights Capital has entered as a "use plaintiff" for the purpose of executing on default judgments against Plaintiffs and class members.

17. Defendant Pollack & Rosen, P.A. is a professional association organized under the laws of the State of Florida with its principal place of business located in Florida. Pollack & Rosen is a debt collection law firm that specializes in representing debt buyers. It is registered in Pennsylvania as a foreign professional association. Defendant Bifulco is a Supervising Attorney for Pollack & Rosen in Pennsylvania and conducts his work on behalf of Defendant River Heights Capital through Defendant Pollack & Rosen.

18. Collectively, Defendant Bifulco and Defendant Pollack & Rosen will be referred to as the "P&R Defendants."

## IV. FACTUAL ALLEGATIONS

### A. Debt Collection Litigation Is a Business Rife with Abuse

19. As many public interest researchers, scholars, and legal advocates have recognized, state court systems for managing debt collection lawsuits are rife with abuse.[1]

---

[1] *See, e.g.,* Center for Responsible Lending, *Debt Collection & Debt Buying: The State of Lending in America & its Impact on U.S. Households* (April 2014), https://www.responsiblelending.org/sites/default/files/uploads/11-debt-collection.pdf; The Pew Charitable Trusts, *How Debt Collection Works in Philadelphia's Municipal Court* (Oct. 2022) at 6, https://www.pew.org/-/media/assets/2022/10/how-debt-collection-works-in-philadelphias-municipal-court.pdf; The Legal Aid Society *et al.,* Debt Deception: How Debt Buyers Abuse the Legal System to Prey on Lower-Income New Yorkers (May 2010), https://mobilizationforjustice.org/wp-content/uploads/reports/DEBT-DECEPTION.pdf; Nina Lea Oishi, *Judging Debt: How Judges' Practices in Consumer-Credit Court Undermine Procedural Justice*

20. For instance, a significant portion of debt collection lawsuits are brought, not by the original creditors, but instead by entities that have purchased the alleged underlying debts from the original creditors.

21. This means that—unless the complete files are provided at the time of purchase which they rarely are—the debt buyer plaintiffs often don't have access to the original contracts or agreements proving the validity of the alleged debts nor do they have access to the original payment records or proof that the debtors had defaulted.

22. Debt buyers who litigate to enforce those debts notoriously rely on "sewer service," such that consumers often do not receive proper notice of the lawsuits filed against them.

23. "Sewer service," where dishonest process servers, attorneys, and debt collectors falsely attest to successful service despite service not actually being accomplished, is particularly problematic. Such "sewer service" carries few risks because, again, low-income and indigent defendants are unlikely to have the resources to notice or challenge these practices on a meaningful scale.[2]

24. As the Pew Charitable Trusts explains, many defendants are never made aware of debt collection lawsuits against them because "process servers' conduct in the field did not comply with the rules, including sliding paperwork

---

(Nov. 22, 2023), YALE L. J. FORUM https://www.yalelawjournal.org/forum/judging-debt-how-judges-practices-in-consumer-credit-court-undermine-procedural-justice.

[2] *Debt Deception* at 6.

under the door, leaving it outside the residence, serving a minor at the residence, or simply reporting that service was made when it wasn't."[3]

25. Because low-income and indigent defendants are unable to afford private legal counsel, even if service is accomplished, many defendants lack the knowledge or means to appear, and if they do appear, lack the knowledge to competently defend the claims against them.

26. Indeed, in the Philadelphia Municipal Court, a Pew Charitable Trusts study found that over 95% of the debt collection cases in Philadelphia Municipal Court that went to final judgment from 2013 to 2018 resulted in a default judgment against the defendant because the defendants never appeared, whether because they were never properly served or for other reasons.[4]

27. However, among all of the debt collection cases filed in Philadelphia Municipal Court from 2013 to 2018, only 1% resulted in a judgment for the plaintiff on the merits, an indication of the thin proof that debt collectors have of the veracity of their claims.[5]

28. These structural realities create perverse incentives for debt buyers to cut corners in their business and litigation practices. Such practices include foregoing obtaining and storing the underlying contracts and records related to the

---

[3] *How Debt Collection Works in Philadelphia's Municipal Court* at 10.

[4] *Id.* at 1.

[5] *Debt Deception* at 6.

debts given the low likelihood that consumers actually appear to challenge debt buyers' deficient claims.

29. As the Center for Responsible Lending explains, "Debt collectors have increased their use of the court system, relying on the assumption that for a variety of reasons, many people will not show up in court when sued on their debts. If a consumer does not respond to or appear in court to defend a debt-collection lawsuit, a collector typically obtains a default judgment against them, and problems with insufficient and inaccurate proof of debt, robo-signed affidavits, and improper service of process usually go unquestioned. The result is that default judgments are obtained against consumers based on questionable evidence, falsified court documents, or in cases that should never have been filed in the first place."[6]

### B. Defendant River Heights Capital Is Buying and Executing on Time-Barred or Very Nearly Time-Barred Default Judgments, Which Are All Over a Decade Old

30. Defendant River Heights Capital is "a debt buyer that specializes solely in the purchase of judgments" for the purpose of forcible collections. It markets its "edge" over competitors as its capacity to "leverage judgment-specific" data "to identify previously restricted liquidation opportunities" and "achieve optimal liquidation."[7] Or, put more simply, to collect upon judgments other debt collectors have recognized are unenforceable.

---

[6] *Debt Collection & Debt Buying* at 13.

[7] *River Heights Capital: About Us* (accessed August 16, 2025), https://riverheightscapital.com/about-us.

31. Defendant River Heights Capital's business model in Pennsylvania is to purchase ancient and unsubstantiated debt accounts reduced to decades-old default judgments for the purpose of extracting money from consumers through bank account garnishment and holding judgment liens against real property that continue to accrue interest. In doing so, Defendant River Heights Capital systematically engages in unlawful conduct and violates numerous federal and state statutes put in place to protect consumers from predatory and unconscionable debt collection tactics.

32. Defendant River Heights Capital obtained the default judgments at issue in this case by purchasing them from Unifund CCR Partners. Unifund is itself a debt buyer that purchases debts for pennies on the dollar. And Unifund was the plaintiff in the underlying default judgment cases, bringing the lawsuits after purchasing the alleged debts from other various creditors.

33. The alleged debts that Defendant River Heights Capital purchased from Unifund and seeks to collect on are rife with inaccuracies and insufficiencies of factual proof, exacerbated by the number of times that the accounts were bought and sold and the age of the alleged debts.

34. The judgments against the Plaintiffs and class members that Defendant River Heights Capital obtained for the purpose of holding a judgment lien or executing against personal property are all over a decade old. Most were obtained between 2004 and 2009, and the purported debts underlying the judgments are even older, dating back to the 1990s and early 2000s.

35. Over the course of those transfers, documents that might have existed to verify the validity of the original debts have been lost.

36. Despite lacking critical documents, Defendants still mark these ancient debts to their use in order to file writs of execution to garnish the bank accounts of Plaintiffs and class members and to hold judgment liens against any real property they might possess now or in the future.

37. Defendants' collection efforts, moreover, are made against debts that are older than a decade, most older than fifteen years. In the case of named Plaintiffs, the judgments against Mr. Kidd and Ms. Johnson were issued in 2004 and the judgment against Ms. McKnight was issued in 2006. But Defendants did not begin their collection efforts against the named Plaintiffs until 2024, *i.e.* eighteen to twenty years after the default judgments they are collecting against. The alleged debts underlying these defaults are years older.

38. When Defendants file their writs of execution on these ancient debts, they do so claiming both the alleged default judgment amount along with all the interest that has accrued over the last decade or more. Because of this significant time lapse since the entry of default judgment, the interest demand is often *more than double* the original judgment amount.

39. Indeed, for Mr. Kidd, the alleged debt of $4,215.16 at default had more than doubled to $9,176.35 at the time of Defendants' collection efforts. Similarly, for Ms. McKnight, the alleged debt of $2,039.97 at default had more than doubled to $4,317.92 at the time of Defendants' collection efforts. And for Ms. Johnson, the

alleged debt of $2,911.43 at default had more than doubled to $6,431.95 at the time of Defendants' collection efforts.

### C. Defendant River Heights Capital Does Not Send Any Notice Prior to Executing on Default Judgments Over a Decade Old

40. As described above, the default judgments that Defendants attempt to collect on are over a decade old, with the alleged underlying debts even older. Further, per their business model, they understand that previous holders of the alleged debts have largely treated these debts as unenforceable and made no collection efforts over the prior ten, fifteen, or twenty years.

41. Despite this fact, Defendants provide no notice to Plaintiffs or class members about the existence of those alleged debts, the assignment of those alleged debts, or of Defendants' intent to collect on said debts before filing praecipes to mark the judgments—which are automatically liens—to their use or executing on those alleged debts through garnishment of Plaintiffs' and class members' bank accounts.

42. And this is despite federal law requiring a specific notice to a consumer debtor to be sent to the consumer within five days of a debt collector's initial contact to give the consumer the opportunity to contest the validity of the debt. *See* 15 U.S.C. § 1692g(a). Plaintiffs and class members never received any such notice from Defendants either prior to or after Defendants began their collection efforts against them.

43. Indeed, Plaintiffs and class members did not receive notice prior to Defendants' freezing and garnishing their bank accounts through writs of execution.

44. Defendants didn't even follow basic rules of civil procedure requiring that any papers filed in a legal proceeding—here the praecipes for writs of execution filed on the default judgment dockets as well as the praecipes for the courts to recognize the assignment of the judgments to Defendant River Heights Capital and Defendant David Bifulco's entry of appearance as counsel—be served on all parties to the action. *See* Pa.R.C.P. 440.

45. Several of the Plaintiffs, including Mr. Kidd and Ms. Johnson, contacted the P&R Defendants, as counsel for Defendant River Heights Capital, to try to understand and contest the attempted garnishment of their bank accounts prior to seeking assistance from Community Legal Services. Even after speaking with Defendants, Plaintiffs did not receive the validation notices required under 15 U.S.C. § 1692g.

46. Receipt of the legal papers marking the judgment to the use of Defendant River Heights Capital, entering the appearance of counsel, or the debt validation notice would have alerted the Plaintiffs to the existence of the lawsuits and judgments against them, to the identity of the entity attempting to collect on the judgment, and to their rights to seek validation of the alleged debt, as required by law. Instead, Plaintiffs and class members remained in the dark as to why their financial lifelines were jeopardized through bank account garnishment and judgment liens.

### D. With Respect to the Philadelphia Class, Defendant River Heights Capital Executes on Judgments Which It Has Not and Cannot Meaningfully Review to Verify the Validity of the Debt

47. When Defendants file praecipes for writs of execution against class members, it lists the amount of the debt it is seeking, plus interest and fees, and its attorney, Defendant Bifulco, submits a sworn affidavit verifying those facts.

48. Despite this sworn affidavit, neither Defendant River Heights Capital nor its attorney Defendant Bifulco engaged in any meaningful review of the judgments or documents underlying the judgments before directing the Sheriff's Office to issue writs of execution to garnish the bank accounts of Plaintiffs and Philadelphia Class members.

49. This is because, with respect to the Philadelphia Class, the documents to prove the validity of those debts or even the validity of the default judgments themselves simply do not exist in the court records, and Defendants do not obtain those documents from the original debt buyer when they receive the assignments of those debts.

50. In the Philadelphia Court of Common Pleas, this is because—per the Court's Office of Judicial Records—all court records from 1995–2005 are indefinitely unavailable because the room in which they are stored at City Hall has been indefinitely sealed owing to asbestos contamination.

51. For judgments in the Philadelphia Municipal Court, the Court's seven-year record retention policy results in the destruction of any physical files after seven years, such that any undigitized files that are older than seven years old are not available.

52. Upon information and belief, Philadelphia Municipal Court Records from prior to 2007 were never digitized.

53. Thus, in cases where the original complaint, underlying agreements to the debt and proofs of default, affidavit of service, proofs of assignment to Unifund, and other supporting documents are unavailable on the court system, Defendant River Heights Capital could not have conducted any kind of meaningful review to verify the debts it has sought to execute on if it did otherwise obtain those documents along with the purchase of the debts.

54. Moreover, the experiences of the named Plaintiffs suggest that Defendant River Heights Capital did not purchase those documents along with the debts.

55. Specifically, Defendant River Heights Capital did not and could not review (a) the verified complaints for the lawsuits; (b) the underlying agreements for the alleged debts and proof of default thereon; (c) affidavits of service for the lawsuits; (d) documentation of the chain of title sufficient to establish whether Unifund and now River Heights Capital actually had valid assignment to collect on the judgment.

56. Any meaningful review of the judgments that Defendant River Heights Capital sought to mark to its use and execute on would have revealed that the judgments were either improper or that there is a strong inference that the judgments were improperly obtained without service, adequate pleadings, required documentation, or proof of standing.

57. Yet, under penalty of perjury, Defendants filed praecipes to mark the judgments to the use of River Heights Capital for the purpose of collection and sought writs of execution without regard to whether the judgments or executions were proper, or whether the case files and dockets created a strong inference that the judgments or executions were likely improper.

**E. Defendant River Heights Capital Also Attempts to Execute on Debts That Are Statutorily Time-Barred**

58. Under Pennsylvania law, an execution against personal property must be issued within 20 years after the entry of the judgment upon which the execution is to be issued. 42 Pa.C.S. § 5529.

59. Defendants, nevertheless, have a practice of executing against and garnishing the bank accounts of Plaintiffs and class members for default judgments entered over twenty years prior to the filing of writs of execution.

60. Most notably, among the named Plaintiffs, Ms. Barbara Johnson had a default judgment entered against her on November 12, 2004, yet over twenty years later, on January 5, 2025, Defendants filed their writ of execution against Ms. Johnson, to garnish her personal bank account for the judgment amount of $2,911.43 plus $3,520.52 in interest accumulated since 2004 for a total of $6,431.95.

61. Plaintiffs' attorneys have identified other class members in Philadelphia against whom Defendants have sought to enforce time-barred debts and anticipate, based on this information, more across the state.

### F. River Heights and Its Attorneys Engaged in An Assortment of Other Unconscionable and Unfair Practices When Engaged in Debt Collection Against Class Members

62. In addition to (1) failing to send notices alerting consumers to the decades-old alleged debts that they sought to collect on, (2) falsely claiming that they had engaged in meaningful attorney review of the validity of the debts—which was impossible due to lack of documentation of the debts of the validity of the underlying debts, and (3) knowingly collecting on time-barred debts, Defendants also systematically engaged in other unfair and unconscionable practices to collect on dubious debts, including but not limited to the following.

#### 1. Defendants regularly mark judgments to the use of Defendant River Heights Capital for the purpose of collection and seek to execute on judgments that are invalid for lack of service.

63. Defendants regularly assign default judgments to their use and execute on judgments where Plaintiffs and class members were not properly served and where there is no valid affidavit of service in their possession or in the available court records.

64. Defendants attempted to execute on the judgments against each of the named Plaintiffs, even though not a single one of them was served.

65. In each one of these cases, there is no affidavit of service on the docket, and Defendants did not have affidavit of services in its possession at the time that it sought to execute on the default judgments.

66. In each one of those cases, had the Plaintiffs been properly served in the underlying default judgment action, they would have had the opportunity to defend themselves and asserted multiple meritorious defenses, as they have in

filing petitions to open and/or strike the judgments after learning about the cases against them for the first time after Defendants' attempts to garnish their bank accounts.

67. After Plaintiffs individually challenged the default judgments through petitions to open and/or strike judgments for lack of service, Defendants have continued to defend the default judgments, despite being unable to show valid affidavits of service when challenged.

68. Even though the default judgments that Defendants seek to collect on were obtained without proper service, Defendants continue to pursue collection against Plaintiffs and class members, claiming the default judgment plus accrued interest—which, because of the time that has elapsed since the entry of default judgment, is often *more than double* the original judgment amount.

**2. Defendants marked the judgments to the use of River Heights Capital for the purpose of collection without valid assignment as required by law.**

69. Without a valid assignment of the original debt, debt buyers, like Defendant River Heights Capital, who are strangers to the initial contract, are not real parties in interest with standing to pursue claims through such methods as writs of execution.

70. Despite this, Defendants regularly seek to collect alleged debts against Plaintiffs and class members without authority to do so.

71. Defendant River Heights Capital filed praecipes for writs of execution without having a valid assignment of the alleged debt, as required by law.

72. Defendant River Heights Capital has routinely failed to show that it has a valid written assignment of the claims that they seek to collect on.

73. For example, in Ms. McKnight's case, Defendant Bifulco filed a paper with the court requesting that the judgment be marked to the use of Defendant River Heights Capital based on an unsigned document that states that Unifund had assigned the judgment to Defendant River Heights Capital. It is unclear who even drafted this document and whether it is a written assignment from Unifund, or a document drafted by Defendant River Heights Capital claiming an assignment.

74. In Mr. Kidd's case, Defendant Bifulco filed a Praecipe for Assignment of Judgment requesting that the prothonotary "kindly assign the judgment entered in this matter on December 1, 2004 in favor of Unifund CCR Partners, to River Heights Capital, LLC c/o Pollack & Rosen, P.A., 205 West Broad Street, Bethlehem, PA 18018. … The basis for this substitution is the sale of the subject account to Defendant River Heights Capital, LLC c/o Pollack & Rosen, P.A., 205 West Broad Street, Bethlehem, PA 18018." No writing from Unifund assigning the claim to Defendant River Heights Capital was filed.

75. In some of the requests for assignment (as in Ms. McKnight's case, but not Mr. Kidd's case, for example), there are appended putative bills of sale. However, the appended bills of sale are wholly insufficient to show a complete written assignment. They do not include purchase agreements nor do they include business records to show which accounts were bought and sold.

76. As a result, the most information that can be gleaned from the bills of sale—which are not even available in all class members' cases—is that Defendant River Heights Capital may have acquired some unspecified debt accounts of unknown quality from Unifund, subject to unknown terms and conditions. This is a far cry from showing that Defendant River Heights Capital has a valid written assignment to the debt accounts reduced to judgment that are marked to its use.

77. Without a full written assignment, it is unlawful for Defendant River Heights Capital to take action to enforce or collect on claims.

78. Moreover, lacking the original agreements underlying the alleged debts, Defendants are unable to review whether those agreements even permit assignments, yet Defendants execute on the putatively assigned debts anyways.

**3. Defendants regularly seek to collect on judgments that include unlawful interest and fees.**

79. Defendants regularly pursue collection of alleged debts against Plaintiffs and class members that include interest and fees that are not supported by contract, statements, or otherwise permitted by law.

80. For example, in Mr. Kidd's case, the alleged praecipe for default judgment states that Mr. Kidd owed $3,121.70 in principal, $390.93 in interest, and $702.53 (20% of principal plus interest) for attorney's fees—all despite the fact that there is no written contract, or allegation of a written contract, that allows for interest and attorney's fees.

81. Defendants then sought to execute against the nearly twenty-year-old judgment against Mr. Kidd after two decades of interest accumulated on top of the

unlawful fees and interest, resulting in much higher unauthorized interest and fees balances.

### 4. Defendants unduly prolong legal proceedings by continuing to defend judgments that they have good reason to know are invalid.

82. Any level of meaningful review of the default judgments that Defendants regularly collect on reveals serious, widespread defects, including lack of service, lack of a pleading, lack of standing, and unlawful charges.

83. However, even if Defendants somehow did not realize that it was impossible to verify the default judgments they sought to collect on and that many if not all of them suffered fatal defects to validity, their decision to continue such to pursue collections against Plaintiffs and class members after such defects were brought to its attention reflects a systematic pattern of unconscionable and unfair conduct related to collections.

84. For example, in Ms. McKnight's case, even after counsel from Community Legal Services notified Defendants of the lack of an affidavit of service, they refused to vacate the default judgment and instead requested that Ms. McKnight make payments towards the judgment to satisfy, rather than vacate, the judgment. In fact, Defendants threatened to file a writ of revival against Ms. Knight to reinstate their lien priority against Ms. McKnight's home if she did not settle.

85. The same thing happened to Mr. Kidd. Even after the lack of affidavit of service was brought to Defendants' attention, they not only failed to voluntarily vacate the invalid default judgment but also went as far as to ask for payment towards the judgment, which they then knew was invalid.

86. In the case of Ms. Johnson, Defendants went so far as to ask for a release from liability for their unlawful actions in attempting to collect a debt in violation of the FDCPA instead of agreeing to vacate the invalid judgment.

### G. Defendants' Conduct Caused Harm to Plaintiffs and Class Members

87. Defendants' unlawful activities harmed Plaintiffs and hundreds of class members.

88. These harms included, but were not limited to: deprivation of funds (temporary or permanent) due to attempted or completed bank account garnishments; personal hardship, missed payments, late fees, and additional interest on unpaid balances due to frozen bank accounts and inability to engage in normal financial transactions; deprivation of economic opportunity and reputational damage due to judgment liens on property; time and money spent to appear at court dates and otherwise challenge the executions and judgment liens; and actual and emotional damages.

89. Defendants' actions are ongoing and will cause further harm to class members absent court intervention.

## V. FACTS CONCERNING PLAINTIFFS

### A. Michael Kidd

#### 1. The Garnishment of Mr. Kidd's Account without Notice

90. Plaintiff Michael Kidd is a forty-nine-year-old resident of Philadelphia.

91. After years of serious hardship, Mr. Kidd established himself as the financial rock for his family. He worked hard to build up savings to support his daughter's education, as well as to support his mother, nieces, and nephews.

92. In late September 2024, Mr. Kidd's bank account was frozen, suddenly depriving both him and his family of access to all his life savings.

93. Mr. Kidd initially had no idea as to why he lost access to the funds in his bank account. He received information from his bank that the garnishment was due to a writ of execution on a judgment against him. Mr. Kidd had no idea that there was a judgment against him.

94. The bank gave Mr. Kidd the information it had about the writ of execution against his bank account. From the bank, Mr. Kidd learned that a company called River Heights Capital, which he had never heard of, was garnishing $9,176.35 from his bank account because of a judgment against him. He did not believe he owed the alleged debt, had never been served with a court complaint, never received notice of the judgment, never received notice of the assignment of the judgment, never received notice of entry of appearance of Defendant River Heights Capital's counsel, and never received a debt validation notice.

95. At the bank's suggestion, Mr. Kidd tried to contact Defendant Bifulco, several times. When he finally got through to Defendant Bifulco, he explained that all the money was taken from his bank account, and he did not know why.

96. Mr. Kidd recalls that Defendant Bifulco told him that he owed the money because of a judgment from 2004. Mr. Kidd told Defendant Bifulco that the debt could not have been his because he was incarcerated for several years around 2004. However, Defendant Bifulco continued to insist that Mr. Kidd owed the money.

97. Mr. Kidd never received any notice from the Defendants as provided for in 15 U.S.C. § 1692g.

**2. The Alleged Debt and Defendants' Collection Efforts**

98. Unbeknownst to Mr. Kidd, on October 1, 2004, Unifund had filed Unifund CCR Partners v. Kidd, docket number 040903600, against him in the Philadelphia Court of Common Pleas. Mr. Kidd was never served with the complaint and there is no affidavit of service in the court records.

99. On December 1, 2004, a default judgment was entered in favor of Unifund CCR Partners against Mr. Kidd for $4,215.16. Mr. Kidd was never notified of the judgment. Nor did he receive, at any time after the judgment, any bills or statements regarding the judgment debt or any interest accruing on such debt.

100. Almost 20 years later, Defendant River Heights Capital filed a praecipe with the Court of Common Pleas on September 6, 2024 requesting that the prothonotary assign the judgment from Unifund to Defendant River Heights Capital. No writing from Unifund to assign the judgment to Defendant River Heights Capital was included with the praecipe. Defendant Bifulco made the filing as Defendant River Heights Capital's attorney through his firm, Defendant Pollack & Rosen.

101. Mr. Kidd was not notified of the assignment of the judgment, Defendant Bifulco's entry of appearance as counsel, or the filing of this praecipe.

102. On September 13, 2024, Defendant Bifulco, on behalf of Defendant River Heights Capital, filed a praecipe for writ of execution in order to garnish Mr.

Kidd's Santander Bank account for the judgment amount of $4,215.16 plus $4,961.19 in interest accumulated since 2004 for a total of $9,176.35 plus costs.

103. The praecipe for writ of execution, signed by Defendant Bifulco on behalf of Defendant River Heights Capital, is dated July 9, 2024, two months before the judgment had even been assigned on the docket.

104. The praecipe of writ of execution also listed an incorrect address for Mr. Kidd, such that he received no notice of the writ of execution. He only learned about the execution and the underlying judgment when over $9,000 suddenly disappeared from his bank account with no notice, prompting him to contact his bank.

105. The praecipe for writ of execution was filed without review of the complaint, the agreement underlying the alleged debt and proof of default thereon, an affidavit of service, the chain of title, or other documents in the case file sufficient to validate the debt.

106. Mr. Kidd only learned about the fact that Unifund had taken a default judgment against him—which Defendant River Heights Capital later claimed assignment of—after seeking counsel from Community Legal Services.

107. With assistance from Community Legal Services, Mr. Kidd was able to learn that there was no court complaint or attachments providing the underlying agreement or proof of default available on the docket or with the Court of Common Pleas.

108. There was no praecipe for judgment on the docket or available in the court's records.

109. There was no affidavit of service on the docket or available in the court's records.

110. There were no documents establishing chain of title on the docket or available in the court's records.

**3. Defendants Continued Collection Efforts Despite Knowing the Debt Could Not Be Verified**

111. After learning that the complaint, affidavit of service, and praecipe for judgment were unavailable through the court, counsel from Community Legal Services reached out to Defendant Bifulco three times to request these documents and received no response.

112. On October 31, 2024, with assistance from counsel, Mr. Kidd filed a petition to open and/or strike, which the court scheduled for a hearing on February 13, 2025.

113. In the time between when the petition was filed and the hearing date, counsel for Mr. Kidd continued to request documentation underlying the judgment from Defendant Bifulco. On December 17, 2024, Defendant Bifulco shared that the only documents in his possession were (a) a bill of sale for a portfolio of debts from the alleged original creditor to Unifund from 2003, referencing missing purchasing agreements and account lists, accompanied by an "extract" created for the sole purpose of litigation—not an authentic part of the bill of sale—that only indicated Mr. Kidd's name improperly spelled and the last four digits of an "account number;"

(b) a bill of sale from Unifund to Defendant River Heights Capital from 2022 that simply copied the previous deficient identification of the debt; and (c) a praecipe to enter default that was allegedly submitted to the court, with no indication as to where the document came from or verification of its authenticity.

114. On January 17, 2025, Defendant Bifulco shared the following additional documents: (a) an unsigned, unverified, error-ridden draft document without any supporting contractual documentation of the debt, interest, or fees charged, which Defendants alleged was the complaint underlying the judgment; and (b) an unsigned, unverified debt validation notice from Unifund to Mr. Kidd, with no proof of mailing, dated to 2003.

115. Defendant River Heights Capital did not have and did not review the documents that Defendant Bifulco shared with Community Legal Services prior to filing a praecipe for writ of execution to garnish Mr. Kidd's bank account.

116. Defendants did not possess or review a complaint, an agreement underlying the alleged debt or proof of default thereon, an affidavit of service, documents establishing chain of title, or the case file prior to filing a praecipe for writ of execution under penalty of perjury.

117. As the hearing date on the petition to open and/or strike approached, there continued to be no proof that Mr. Kidd was served with the court case against him, no complete proof of the actual complaint that may have been filed against him, and no complete documentation that Unifund was the actual owner of a valid debt attributable to Mr. Kidd.

118. Even though Mr. Kidd continued to contest the validity of the judgment for lack of service and the validity of the alleged underlying debt, Defendants continued to pursue collection on the judgment, unduly prolonging the legal proceedings against Mr. Kidd. Defendants did so to induce Mr. Kidd to drop his challenge to the execution or enter into a settlement favorable to Defendant River Heights Capital.

119. Defendants even filed an opposition to the petition to open and/or strike. Despite Rule 1023.1(c) of the Pennsylvania Rules of Civil Procedure requiring a reasonable inquiry, evidentiary support, and lack of frivolity in court filings, in its opposition to the petition, Defendants made numerous unsubstantiated claims in order to continue to seek collection on the invalid judgment.

120. For example, Defendant River Heights Capital claimed that the Philadelphia County Sheriff's Office personally served Mr. Kidd himself on October 6, 2024 at the address 2444 S. Marshall Street Philadelphia, PA 19148. Not only is this assertion not substantiated by an affidavit of service, but it is also plainly impossible because Mr. Kidd was incarcerated at the time.

121. On February 13, 2025, following a contested hearing, the court entered an order striking the default judgment against Mr. Kidd and marking the case against him as dismissed.

122. As a result of the court order, the writs of execution were dissolved and Mr. Kidd regained access to the funds in his bank account that were previously subject to garnishment.

123. As a result of Defendant River Heights Capital's actions collecting on a default judgment it had good reason to know was invalid, Mr. Kidd experienced extensive emotional and financial harm.

124. Mr. Kidd lost access to the garnished funds for almost half a year, and because he plays a major role in supporting his family, his whole family suffered. Mr. Kidd had trouble providing the financial support that he typically provides to his daughter so that she can complete her college education, which in addition to being financially challenging, was emotionally devastating. He fell behind on his bill payments and needed to enter into new payment plans with creditors, which caused harm to his credit. He needed to take on extra hours at work to make ends meet. He could not provide the same level of support that he typically provides his mom, nieces, and nephews.

125. The garnishment happened in the Fall of 2024 and was not dissolved until February 2025. As a result, Mr. Kidd was without funds to get his family gifts for the holidays.

126. Mr. Kidd worked very hard to get his life on track after years of financial hardship and incarceration. He felt proud of being the provider for his family. The garnishment and its repercussions harmed Mr. Kidd's ability to

continue to be the provider for his family and interrupted his path towards economic stability.

**B. Donna McKnight**

**1. The Garnishment of Ms. McKnight's Account without Notice**

127. Plaintiff Donna McKnight is a fifty-eight-year-old resident of Philadelphia.

128. Ms. McKnight is a low-income disabled person whose only limited income is from Social Security. She owns her modest home, which was encumbered by a lien arising from an invalid court judgment that River Heights claimed to own and sought to execute on.

129. Around December 2, 2024, Ms. McKnight learned that Defendant River Heights Capital, which she had never heard of, sought to garnish $4,317.92 from her bank account. She received no notice from Defendants prior to the attempted garnishment.

130. This was the first time Ms. McKnight became aware that the underlying lawsuit had been filed against her.

131. Fortunately for Ms. McKnight, the only funds in Ms. McKnight's bank account were exempt from garnishment, as her bank recognized.

132. Ms. McKnight never received any notice from the Defendants as provided for in 15 U.S.C. § 1692g.

**2. The Alleged Debt and Defendants' Collection Efforts**

133. Ms. McKnight had never heard of the original lawsuit against her. She was never served with the court complaint, had no other notice of the action or

judgment, never received notice of the assignment of the judgment, notice of Defendant River Heights Capital's counsel's entry of appearance, or a debt validation notice. Ms. McKnight had never heard of Defendant River Heights Capital and did not believe that she owed them any money.

134. Without Ms. McKnight's knowledge, on December 23, 2005, Unifund had filed Unifund CCR Partners v. Donna McKnight, docket number SC-05-12-23-7976. She was never served with the complaint and there is no affidavit of service.

135. On February 27, 2006, a default judgment was entered in favor of Unifund against Ms. McKnight for $2,039.97. Ms. McKnight was never notified of the judgment. Nor did she receive, at any time after the judgment, any bills or statements regarding the judgment debt or any interest accruing on such debt.

136. On September 9, 2024, Defendant River Heights Capital entered as a use plaintiff by filing a praecipe for assignment of judgment document with the court. Defendant Bifulco made the filing as Defendant River Heights Capital's attorney through his firm, Defendant Pollack & Rosen. This filing was never served on Ms. McKnight.

137. The assignment of judgment document is an unsigned document that states that Unifund assigned the judgment to Defendant River Heights Capital. It is unclear who drafted this document and whether it is a written assignment from Unifund, or a document drafted by Defendant River Heights Capital claiming an assignment.

138. Appended to the praecipe to assign of judgment are two bills of sale, one from the original creditor to Unifund in 2004 and the second from Unifund to Defendant River Heights Capital in 2022. Neither of these documents show written assignment of the judgment. There is an appended "extract" prepared for the sole purpose of litigation—not an authentic part of the bills of sale—that merely reference an "account number" supposedly associated with Ms. McKnight's name. These documents are wholly insufficient to show a complete written assignment.

139. On October 4, 2024, Defendant River Heights Capital filed a praecipe for writ of execution seeking to garnish Ms. McKnight's Wells Fargo bank account for the judgment amount of $2,039.97 plus $2,277.95 in interest accumulated since 2006 for a total of $4,317.92. The filing was never served on Ms. McKnight.

140. The praecipe for writ of execution was filed without review of the complaint, the agreement underlying the alleged debt and proof of default thereon, an affidavit of service, the chain of title, or other documents in the case file sufficient to validate the debt.

141. On or around October 4, 2024, Defendants directed the Philadelphia Sheriff's Office to serve Wells Fargo with a writ of execution to garnish Ms. McKnight's bank account.

142. The writs of execution were dissolved shortly thereafter because the only funds in Ms. McKnight's bank account were exempt from garnishment.

However, the judgment, which is automatically a lien on property, like Ms. McKnight's home, remained, and continued to accrue interest at a rate of 6%.

### 3. Defendants Continued Collection Efforts Despite Knowing the Debt Could Not Be Verified

143. At the time that Community Legal Services first met with Ms. McKnight, there was no court complaint, affidavit of service, or judgment available on the court docket, and Ms. McKnight had never received any of those documents. Community Legal Services requested these documents from the court and was informed by court administration that they were not available.

144. Counsel from Community Legal Services then reached out to Defendant Bifulco, to request a copy of the complaint, affidavit of service, judgment, and any other documentation of the chain or title underlying the default judgment.

145. After receiving no response, on December 16, 2024, Ms. McKnight filed a petition to open and/or strike the default judgment.

146. Only after Ms. McKnight filed her petition did Court Administration for the first time "regenerate" the complaint using electronically stored information, which is now available on the docket. However, the "regenerated" complaint is not an authentic complaint—it is incomplete and references attachments that are not available, and it is unclear if attachments were ever filed. After "regenerating" the complaint, Court Administration confirmed that it does not have in its records any original copy of the complaint, any affidavit of service, or the original judgment.

147. Moreover, the "regenerated" complaint indicates that Unifund collected interest and attorney's fees that were not authorized by contract or supported by statements, which Defendants then in turn sought to collect.

148. No authentic copy of the original complaint exists in the court records, and Defendants also do not have a copy of the original complaint.

149. On December 18, 2024, Defendant Bifulco shared that based on a supposed "account number," he believed that the original creditor of the claim underlying the judgment was Citibank for a Best Buy credit card—not, as the docket suggested, Gordon's—and that he would send a card statement when he receives it.

150. On December 20, 2024, after Community Legal Services again, on behalf of Donna McKnight, inquired about the documents underlying the judgment, including the original court complaint, full chain of title, proof of service of the complaint, and the judgment itself, Defendant Bifulco shared what appeared to be the original default judgment order and the same bills of sale that were attached to the assignment of judgment, but no further documentation of the original complaint, no further documentation of the original debt or chain of title, and critically, no proof of service of the complaint.

151. In that same correspondence, Defendant Bifulco indicated that they would request additional documents from Frederic Weinberg, who represented Unifund in taking the default judgment. However, after repeated requests,

Defendants provided no additional documentation supporting the default judgment against Donna McKnight.

152. Defendants did not have or review copies of the complaint, affidavit of service, original judgment, or complete chain of title prior to entering as a use plaintiff or filing a praecipe for writ of execution under penalty of perjury.

153. Even though Ms. McKnight continued to contest the validity of the judgment for lack of service and the validity of the underlying alleged debt, Defendants did not stop its pursuit of collection on the judgment, unduly prolonging the legal proceedings against Ms. McKnight. Defendants did so to induce Ms. McKnight to drop her challenge to the execution and enter into a settlement favorable to Defendant River Heights Capital.

154. Defendant River Heights Capital refused to voluntarily vacate the judgment that it had good reason to believe was invalid up until the day of the petition to open and/or strike hearing, where Defendant River Heights Capital did not appear.

155. On January 15, 2025, the court granted Ms. McKnight's petition and vacated the default judgment and entered a judgment in Ms. McKnight's favor.

156. As a result of Defendant River Heights Capital's actions collecting on a default judgment it had good reason to know was invalid, Ms. McKnight experienced emotional and financial harm.

157. Ms. McKnight has fought throughout her life to maintain financial stability in the face of hardship and knowing that there was a judgment against her

that could be used to threaten that financial stability has caused her extensive anguish.

158. The stress of the court proceedings against Ms. McKnight caused her to develop health issues. Ms. McKnight suffers from a heart condition, and the stress of the court proceedings caused her health to deteriorate.

### C. Barbara Johnson

#### 1. The Garnishment of Ms. Johnson's Account without Notice

159. Plaintiff Barbara Johnson is a seventy-four-year-old resident of Philadelphia who was subject to an invalid court judgment that she knew nothing about until River Heights sought to forcibly collect on it without documentation substantiating the debt, judgment, or its ownership thereof.

160. Ms. Johnson is a low-income disabled person whose only limited income is from Social Security.

161. In February 2025, Ms. Johnson was suddenly unable to access funds in her bank account. When she called her bank to inquire as to why she could not access her account, she was told that the account was subject to garnishment because of a writ of execution filed by Defendant River Heights Capital. Bank of America then directed Ms. Johnson to contact Defendant River Heights Capital.

162. Ms. Johnson never received any notice from the Defendants as provided for in 15 U.S.C. § 1692g.

#### 2. The Alleged Debt and Defendants' Collection Effort

163. Unbeknownst to Ms. Johnson, on September 24, 2004, Unifund had filed Unifund CCR Partners v. Johnson, docket number 040902563, against her in

the Philadelphia Court of Common Pleas. Ms. Johnson was never served with the complaint and there is no affidavit of service in the court records.

164. On November 12, 2004, a default judgment was entered in favor of Unifund and against Ms. Johnson for $2,911.43. Ms. Johnson was never notified of the judgment and there is no copy of the original court judgment available on the docket. Nor did she receive, at any time after the judgment, any bills or statements regarding the judgment debt or any interest accruing on such debt.

165. On November 26, 2024, over twenty years later, Defendant River Heights Capital entered as a use plaintiff by filing a praecipe for assignment of the judgment. Defendant Bifulco made the filing as Defendant River Heights Capital's attorney through his firm, Defendant Pollack & Rosen. Ms. Johnson was not notified of the assignment of the judgment.

166. There is no writing included with the praecipe that is sufficient to show written assignment of the judgment. The only documents included with the praecipe are two bills of sale, one from the original creditor to Unifund in 2003 and the second from Unifund to Defendant River Heights Capital in 2023. Neither of these documents show written assignment of the judgment. There is an appended "extract" prepared for the sole purpose of litigation—not an authentic part of the bills of sale—that merely reference an "account number" supposedly associated with Ms. Johnson's name, with absolutely no other supporting or underlying documentation.

167. On January 5, 2025, Defendant River Heights Capital filed a praecipe for writ of execution to garnish Ms. Johnson's Bank of America account for the judgment amount of $2,911.43 plus $3,520.52 in interest accumulated since 2004 for a total of $6,431.95.

168. At the time that Community Legal Services first met with Ms. Johnson, there was no court complaint, affidavit of service, or judgment available on the court docket, and Ms. Johnson had never received any of those documents. Community Legal Services requested these documents from the court and was informed by court administration that they are not available.

169. The praecipe for writ of execution was filed without review of the complaint, the agreement underlying the alleged debt and proof of default thereon, an affidavit of service, the chain of title, or other documents in the case file sufficient to validate the debt.

170. Notably, Defendants filed the writ of execution past the twenty-year statute of limitations for execution against personal property, per 42 Pa. C.S.A. § 5529(a).

171. On or around January 2, 2025, Defendant River Heights Capital directed the Philadelphia Sheriff's Office to serve Bank of America with a writ of execution to garnish Ms. Johnson's bank account.

#### 3. Defendants Continued Collection Efforts Despite Knowing the Debt Could Not Be Verified

172. When Ms. Johnson learned that her bank account had been frozen, she immediately contacted Defendant Bifulco, as counsel for Defendant River Heights

Capital, who informed her that the garnishment was pursuant to a court judgment that had been entered against her in 2004.

173. Ms. Johnson was shocked and initially believed that she was a victim of a scam because Defendant Bifulco had so little information about the alleged debt and the lawsuit.

174. Ms. Johnson informed Defendant Bifulco that she knew nothing about the lawsuit, but he told her that she must have been served, despite not having proof of service.

175. Defendant Bifulco told Ms. Johnson that he would mail her the court records, but he did not.

176. During that same phone call, Defendant Bifulco also told Ms. Johnson over the phone that the original creditor of the debt was Providian Bank. Ms. Johnson informed Defendant Bifulco that she never had a Providian credit account.

177. Despite Ms. Johnson's express dispute of the debt, Defendants did not produce any original account-level documentation, such as a credit application, contract, or billing statements, indicating that it does not possess such records and therefore cannot substantiate the debt.

178. Ms. Johnson told Defendant Bifulco that she would like to dispute the debt and clear her name, and counsel responded that she would have to go to court to dispute it, despite the fact that Defendants had good reason to know that the default judgment was invalid.

179. Ms. Johnson explained that she needed access to the Social Security funds in her bank account to pay her bills. While Social Security funds are protected from garnishment, the Social Security funds in Ms. Johnson's bank account had not automatically been protected by her bank because she had transferred them from one account to another to pay her bills.

180. Defendant Bifulco told her that he would dissolve the writ of execution once he received confirmation from her bank that the account contained Social Security funds.

181. However, Defendants failed to timely dissolve the writ even after Bank of America filed Answers to Interrogatories with the Court, and served him with a copy, confirming that the account held Social Security funds.

182. As a result, Ms. Johnson was forced to borrow money from family members to pay her mortgage and other expenses.

183. Defendant Bifulco only vacated the writs of execution two months later after counsel from Community Legal Services alerted him to the fact that filing writs of execution after the time permitted by the statute of limitations is a violation of the FDCPA, 15 U.S.C. § 1692(f)(1).

184. Once Ms. Johnson was able to connect with Community Legal Services, she was able to obtain more information about how the garnishment against her—which had caused her significant financial and emotional harm—came to be.

185. When Ms. Johnson was connected with counsel for the first time after learning about the garnishment against her, she learned that the docket lists an attorney for Ms. Johnson, Thomas J. Wagner, whose representation was terminated on the docket as of October 27, 2005. Ms. Johnson does not know Mr. Wagner and never retained him. Mr. Wagner, confirmed that he does not know Ms. Johnson, has never been retained by her, and that he never intentionally entered his appearance on her behalf or participated in this matter. Notably, the docket does not reflect a formal entry or withdrawal of appearance by Mr. Wagner, suggesting that his name may have been mistakenly added through a clerical or data entry error predating the Court's electronic filing system.

186. Counsel from Community Legal Services also reached out to Defendant Bifulco to request the documents underlying the default judgment. Defendants then provided a copy of the praecipe for default judgment, which stated that the claim included a principal balance of $2,138.81, $287.38 in interest, and $485.24 in attorney's fees, all without any writing supporting any of these claims.

187. Defendant Bifulco advised counsel from Community Legal Services that prior counsel for Unifund also lacked additional supporting documentation.

188. Counsel from Community Legal Services requested that Defendant River Heights Capital vacate the default judgment given that it was invalid for lack of service. Defendant River Heights Capital only agreed to vacate the judgment if Ms. Johnson signed an agreement releasing her claims against Defendant River Heights Capital.

189. Later, on April 2, 2025, Defendant Bifulco produced a draft document that is styled as a complaint. However, he did not explicitly represent that it was the complaint filed in the case; the document is unsigned, undated, unstamped, and it references exhibits that were neither attached nor provided. There is no indication that the document is an authentic copy of the complaint filed with the court, as opposed to a draft or some other document.

190. Moreover, Defendant River Heights Capital continued to lack any proof of service.

191. Ms. Johnson then filed a petition to open the default judgment on April 10, 2025, and the court issued an order striking the default judgment on June 2, 2025.

192. Ms. Johnson, through her counsel, has continued to request that Defendant River Heights Capital discontinue the case against her given the lack of an authentic complaint or any proof that supports that there is a valid judgment, and Defendant River Heights Capital has not done so.

193. Ms. Johnson has experienced emotional and financial harm as a result of Defendant River Heights Capital's actions collecting on a default judgment that it had good reason to know was invalid.

194. Ms. Johnson lost access to her bank account for several weeks and fell behind on her bills, requiring her to borrow money from family members to pay for basic expenses, such as her mortgage.

195. The stress of having a judgment for a debt that she does not owe by a company that she does not recognize has taken a significant toll on Ms. Johnson's health. Ms. Johnson suffered a heart attack in late April 2025 while the proceedings against her were ongoing.

## VI. CLASS ACTION ALLEGATIONS

196. Plaintiffs bring this action, pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and as representatives of similarly situated individuals in the form of one class and two subclasses.

197. The class Plaintiffs will seek certification of is for:

> All individuals against whom Defendants have attempted to collect alleged debts in the name of River Heights Capital related to default judgments obtained in Pennsylvania courts ("The Pennsylvania Class").

198. The first subclass Plaintiffs will seek certification of is for:

> All individuals against whom Defendants have attempted to collect alleged debts in the name of River Heights Capital related to default judgments obtained in Philadelphia Court of Common Pleas from 1995 to 2005 or the Philadelphia Municipal Court prior to 2007 ("The Philadelphia Subclass").

199. The second subclass Plaintiffs will seek certification of is for:

> All individuals against whom Defendants have attempted to collect alleged debts in the name of River Heights Capital related to default judgments obtained in Pennsylvania courts which are older than 20 years ("The Expired Judgments Subclass").

200. These classes are so numerous that joinder of all Class Members in this action would be impracticable. Defendant River Heights Capital has filed writs of execution in hundreds of debt collection actions related to default judgments it bought in Philadelphia and across the Commonwealth of Pennsylvania. It has done

so on at least tens of cases where the underlying default judgments are older than 20 years.

201. The class is easily ascertainable and identifiable with Defendants' business and litigation records.

202. Class members present common questions of law and fact and these questions predominate over any individual questions. These questions include, but are not limited to:

a. Whether the P&R Defendants are "debt collectors" under the FDCPA and the Pennsylvania FCEUA?

b. Whether Defendant River Heights Capital is a "debt collector" under the FDCPA?

c. Whether Defendant River Heights Capital is a "creditor" under the Pennsylvania FCEUA?

d. Whether Defendants sent any notices to class members providing them with an opportunity to challenge the validity of the debts pursuant to 15 U.S.C. § 1692g?

e. Whether Defendants sent any notices whatsoever to class members prior to collecting on debts that no collection efforts had been made against for over a decade?

f. Whether Defendants executed on judgments older than 20 years against class members?

g. Whether Defendants had documents sufficient to verify the validity of the default judgment debts?

h. Whether Defendants had documents sufficient to verify the assignment of the default judgment debts?

i. What review, if any, did Defendants undertake to verify the validity of the default judgment debts prior to filing writs of execution?

j. Whether Defendants had a practice of collecting debts against class members without proof of the validity of those debts?

k. Whether the P&R Defendants have a practice of falsely verifying that Defendant Bifulco had reviewed the validity of debts he was collecting for his clients?

l. Whether Defendants systematically and as a matter of course engaged in other unconscionable conduct directed at class members, including making false statements in court filings, prolonging legal proceedings in bad faith, collecting on default judgments they knew were obtained without proper service, and collecting amounts not owed?

m. Whether Defendants' conduct constitutes false or misleading representations with respect to the collection of a debt in violation of 15 U.S.C. § 1692e?

n. Whether Defendants' conduct constitutes unfair or unconscionable means to collect or attempt to collect any debt in violation of 15 U.S.C. § 1692f?

o. Whether Defendants' conduct constitutes a failure to provide the notice mandated by 15 U.S.C. § 1692g prior to the collection of any debt?

p. Whether Defendants' conduct also reflect unfair and deceptive acts and practices under the Pennsylvania FCEUA, 73 P.S. §§ 2270.1 *et seq.* and the Pennsylvania UTPCPL, 73 P.S. §§ 201-1 *et seq.*?

203. The claims of the Plaintiffs are typical of the claims of the proposed class. Defendant River Heights Capital acted in the same manner towards the Plaintiffs and proposed class as a whole by failing to provide proper notice before collecting debts against them, by making misleading representations about the validity of the debts despite not reviewing their validity, by systematically engaging in other unconscionable and unfair conduct related to the collection of these debts, and by collecting on time-barred debts.

204. The Plaintiffs will adequately and fairly protect the interests of all members of the proposed class because they have the requisite personal interest in

the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

205. The Plaintiffs are represented by Community Legal Services of Philadelphia and Langer Grogan & Diver, P.C. Community Legal Services of Philadelphia is the largest civil legal aid provider in Philadelphia, and it has a long history of defending the rights of consumers in the face of predatory debt collection practices. Langer Grogan & Diver, P.C. is a Philadelphia-based boutique complex litigation firm with a focus on consumer rights and public interest law that is experienced in class action litigation.

206. A class action is the superior method for fair and efficient adjudication of this matter in that Defendants have acted in the same manner towards the proposed class as a whole and a class action will avoid numerous separate actions by class members and would unduly burden the courts and create the possibility of inconsistent decisions. Final injunctive and declaratory relief is thus appropriate to the proposed class as a whole.

207. Moreover, it would be impracticable for class members, who are primarily low-income individuals to obtain legal counsel on an individual basis to bring claims of the type raised in this action. Hence, their rights under the law may well be meaningless without certification of a class action seeking common redress.

## VII. Legal Claims

### A. *Unfair or Unconscionable Means of Debt Collection*

**Count I: FDCPA, 15 U.S.C. §1692f, Unfair Practices and Pennsylvania FCEUA, 73 P.S. § 2270.4(a) On Behalf of the Pennsylvania Class Against All Defendants**

208. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

209. The P&R Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C. § 1692a(6), in that they regularly use the instrumentalities of interstate commerce in their businesses, the principal purpose of which is the collection of debts owed or due or asserted to be owed or due another, and are engaged in the business of collecting consumer debts by obtaining judgment liens and executing on judgments to garnish bank accounts.

210. Defendant River Heights Capital is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6) in that it uses instrumentalities of interstate commerce to operate a business whose principal purpose is the collection of debts.

211. Each Plaintiff and class member is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3), in that each Plaintiff and class member is alleged to owe a debt stemming from an unpaid balance on a consumer account.

212. Each Plaintiff and class member is also a "consumer" as defined by the Pennsylvania FCEUA, 73 P.S. § 2270.3, in that each Plaintiff and class member is alleged to owe a debt and incurred liability for the debt within the Commonwealth of Pennsylvania.

213. The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

214. Defendants' practice of failing to send any notice to Plaintiffs and class members—including the notice required under 15 U.S.C. § 1692g or any other form of notice—prior to filing writs of execution against default judgment debts a decade or more old constitutes "unfair or unconscionable means to collect or attempt to collect any debt" under 15 U.S.C. § 1692f.

215. In addition, Defendants systematically engaged in other unfair or unconscionable means to collect debts against Plaintiffs and class members including:

a. Continuing to pursue debt collection after class members indicated that they were disputing the debt or otherwise requested verification of the debt;

b. Attempting to execute on, and executing on, invalid judgments;

c. Executing on judgments against class members without undertaking meaningful review of the case;

d. Collecting interest and fees that are not provided for in the alleged agreements underlying the original debts or otherwise by law;

e. Enforcing judgments without a full valid written assignment, as required by law;

f. Enforcing judgments without serving class members with papers filed with the court that would have alerted them to the assignment of judgment, as required by the rules of civil procedure;

g. Prolonging legal proceedings in bad faith by defending default judgments that they had good reason to know were invalid or likely invalid; and,

h. Seeking releases from class members to insulate themselves from liability from unlawful actions.

216. Moreover, the P&R Defendants are also "debt collectors" as that term is defined by the Pennsylvania FCEUA, in that they are persons who are not creditors, conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor. 73 P.S. § 2270.3.

217. This violation of the FDCPA by the P&R Defendants, as debt collectors under the Pennsylvania FCEUA, also constitutes an unfair or deceptive debt collection act or practice under the Pennsylvania FCEUA. 73 P.S. § 2270.4(a)

218. Violations of the Pennsylvania FCEUA constitute violations of the Pennsylvania UTPCPL, 73 P.S. § 201-1, and are therefore liable for the remedies provided at 73 P.S. § 201-9.2, including trebled damages, costs, and reasonable attorneys' fees.

219. The Defendants' wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

220. As a direct and proximate result of the Defendants' violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and statutory damages under the FDCPA, trebled damages under the Pennsylvania FCEUA, costs, and attorneys' fees.

**Count II: Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(6), Unfair Practices On Behalf of the Pennsylvania Class Against Defendant River Heights Capital**

221. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

222. Defendant River Heights Capital is a "creditor" as defined by the Pennsylvania FCEUA, 73 P.S. § 2270.3, in that it is a person conducting business within the Commonwealth of Pennsylvania to whom the alleged debts are owed.

223. The Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(6), prohibits a creditor from using "unfair or unconscionable means to collect or attempt to collect any debt."

224. Defendant River Heights Capital's practice of failing to send any notice to Plaintiffs and class members—including the notice required under 15 U.S.C. § 1692g or any other form of notice—prior to filing writs of execution against default judgment debts over a decade or more old constitutes "unfair or unconscionable means to collect or attempt to collect any debt" under 73 P.S. § 2270.4(b)(6).

225. In addition, Defendant River Heights Capital systematically engaged in other unfair or unconscionable means to collect debts against Plaintiffs and class members including:

a. Continuing to pursue debt collection after class members indicated that they were disputing the debt or otherwise requested verification of the debt;

b. Attempting to execute on, and executing on, invalid judgments;

c. Executing on judgments against class members without undertaking meaningful review of the case;

d. Collecting interest and fees that are not provided for in the alleged agreements underlying the original debts or otherwise by law;

e. Enforcing judgments without a full valid written assignment, as required by law;

f. Enforcing judgments without serving class members with papers filed with the court that would have alerted them to the assignment of judgment, as required by the rules of civil procedure;

g. Prolonging legal proceedings in bad faith by defending default judgments that they had good reason to know were invalid or likely invalid; and,

h. Seeking releases from class members to insulate themselves from liability from unlawful actions.

226. Violations of the Pennsylvania FCEUA constitute violations of the Pennsylvania UTPCPL, 73 P.S. § 201-1, and are therefore liable for the remedies provided at 73 P.S. § 201-9.2, including trebled damages, costs, and reasonable attorneys' fees.

227. Defendant River Heights Capital's wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

228. As a direct and proximate result of Defendant River Height's Capitals violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual damages, trebled damages, costs, and attorneys' fees.

### *B. Failure to Send Validation of Debts Notices*

**Count III: FDCPA, 15 U.S.C. §1692g, Validation of Debts**
**and Pennsylvania FCEUA, 73 P.S. § 2270.4(a)**
**On Behalf of the Pennsylvania Class Against All Defendants**

229. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

230. The FDCPA, 15 U.S.C. § 1692g(a), requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall…send the consumer a written notice containing," among other things, a statement of the consumer's right to dispute the debt and to obtain the name and address of the original creditor.

231. Defendants initiated several communications with Plaintiffs and class members in connection with the collection of the default judgment debts, including by filing praecipes marking the judgments to the use of Defendant River Heights Capital, by filing entries of appearance in those cases, by filing praecipes for writs of execution, sending the writs of execution to the banks of Plaintiffs and class members, and other direct communications with Plaintiffs and class members.

232. At no time, and certainly not within five days after the initial communication related to the collection of alleged debts, have the Defendants sent notice in compliance with 15 U.S.C. § 1692g(a) to Plaintiffs or class members.

233. This violation of the FDCPA by the P&R Defendants, as debt collectors under the Pennsylvania FCEUA, also constitutes an unfair or deceptive debt collection act or practice under the Pennsylvania FCEUA. 73 P.S. § 2270.4(a).

234. The Defendants' wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts without an opportunity to challenge the validity of the collected upon debts and, unless enjoined, will cause further irreparable injury.

235. As a direct and proximate result of the Defendants' violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and statutory damages under the FDCPA, trebled damages under the Pennsylvania FCEUA, costs, and attorneys' fees.

### *C. False or Misleading Representations in Connection with Debt Collection*

**Count IV: FDCPA, 15 U.S.C. §1692e, False Representations and Pennsylvania FCEUA, 73 P.S. § 2270.4(a) On Behalf of the Philadelphia Class Against All Defendants**

236. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

237. The FDCPA, 15 U.S.C. § 1692e, prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

238. As alleged above, records and documentation related to default judgments obtained in Philadelphia Court of Common Pleas from 1995 to 2005 or the Philadelphia Municipal Court prior to 2007 have not been maintained by those courts and are not accessible through those courts.

239. Moreover, as alleged above, Defendant River Heights Capital never obtained the underlying records and documentation regarding the default judgment debts of Plaintiffs and class members when purchased from Unifund or other creditors.

240. Defendants therefore violated the 15 U.S.C. 1692e by making false, deceptive, and misleading representations related to the collection of the debts against Plaintiffs and members of the Philadelphia Class by:

a. Taking assignment of judgments for the purpose of holding a judgment lien or executing against property without undertaking a meaningful review of the validity of the judgment and the chain of title of the underlying debt;

b. Misrepresenting the validity of the debt to class members;

c. Collecting debts that are not expressly authorized by an agreement creating the debt or permitted by law;

d. Executing on judgments against class members without undertaking meaningful review of the case; and,

e. Making false and misleading statements and otherwise prolonging legal proceedings in bad faith by defending default judgments that they had good reason to know were invalid or likely invalid.

241. This violation of the FDCPA by the P&R Defendants, as debt collectors, also constitutes an unfair or deceptive debt collection act or practice under the Pennsylvania FCEUA. 73 P.S. § 2270.4(a).

242. The Defendants' wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

243. As a direct and proximate result of the Defendants' violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and statutory damages under the FDCPA, trebled damages under the Pennsylvania FCEUA, costs, and attorneys' fees.

**Count V: Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(5), False Representations On Behalf of the Philadelphia Class Against the Defendant River Heights Capital**

244. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

245. The Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(5), prohibits a creditor from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."

246. As alleged above, records and documentation related to default judgments obtained in Philadelphia Court of Common Pleas from 1995 to 2005 or the Philadelphia Municipal Court prior to 2007 have not been maintained by those courts.

247. Moreover, as alleged above, Defendant River Heights Capital never obtained the underlying records and documentation regarding the default judgment debts of Plaintiffs and class members when purchased from Unifund or other creditors.

248. Defendant River Heights Capital therefore violated 73 P.S. § 2270.4(b)(5), by making false, deceptive, and misleading representations related to the collection of the debts against Plaintiffs and members of the Philadelphia Class by:

a. Taking assignment of judgments for the purpose of holding a judgment lien or executing against property without undertaking a meaningful review of the validity of the judgment and the chain of title of the underlying debt;

b. Misrepresenting the validity of the debt to class members;

c. Collecting debts that are not expressly authorized by an agreement creating the debt or permitted by law;

d. Executing on judgments against class members without undertaking meaningful review of the case; and,

e. Making false and misleading statements and otherwise prolonging legal proceedings in bad faith by defending default judgments that they had good reason to know were invalid or likely invalid.

249. Defendant River Heights Capital's wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

250. As a direct and proximate result of Defendant River Height's Capitals violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual damages, trebled damages, costs, and attorneys' fees.

### *D. Collection on Time-Barred Debts*

**Count VI: FDCPA, 15 U.S.C. §1692f(1), Unfair Practices and Pennsylvania FCEUA, 73 P.S. § 2270.4(a) On Behalf of the Expired Judgments Class Against All Defendants**

251. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

252. The FDCPA, 15 U.S.C. § 1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

253. Among the specifically enumerated violations of § 1692(f), such unfair or unconscionable means include "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1).

254. Federal regulations interpreting this provision, specifically find that "a debt collector must not bring or threaten to bring a legal action against a consumer to collect a time-barred debt." 12 C.F.R § 1006.26(b).

255. Under Pennsylvania law, an execution against personal property must be issued within 20 years after the entry of the judgment upon which the execution is to be issued. 42 Pa.C.S. § 5529.

256. Defendants therefore violated 15 U.S.C §1692f(1) against Plaintiff Johnson and the Expired Judgments Class by filing writs of execution related to time-barred debts older than 20 years.

257. This violation of the FDCPA by the P&R Defendants, as debt collectors, also constitutes an unfair or deceptive debt collection act or practice under the Pennsylvania FCEUA. 73 P.S. § 2270.4(a)

258. The Defendants' wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

259. As a direct and proximate result of the Defendants' violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual and statutory damages under the FDCPA, trebled damages under the Pennsylvania FCEUA, costs, and attorneys' fees.

**Count VII: Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(6)(i), Time-Barred Collections On Behalf of the Expired Judgments Class Against Defendant River Heights Capital**

260. Plaintiffs incorporate and reallege the preceding paragraphs as though fully set forth herein.

261. The Pennsylvania FCEUA, 73 P.S. § 2270.4(b)(6), prohibits a creditor from using "unfair or unconscionable means to collect or attempt to collect any debt."

262. Among the specifically enumerated violations of 73 P.S. § 2270.4(b)(6), such unfair or unconscionable means include "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 73 P.S. § 2270.4(b)(6)(i).

263. Under Pennsylvania law, an execution against personal property must be issued within 20 years after the entry of the judgment upon which the execution is to be issued. 42 Pa.C.S. § 5529.

264. Defendant River Heights Capital therefore violated 73 P.S. § 2270.4(b)(6)(i) against Plaintiff Johnson and the Expired Judgments Class by filing writs of execution related to time-barred debts older than 20 years.

265. Defendant River Heights Capital's wrongful acts have caused injury and damages to Plaintiffs and class members including the freezing and garnishment of their bank accounts and, unless enjoined, will cause further irreparable injury.

266. As a direct and proximate result of Defendant River Heights Capital's violations, Plaintiffs and class members have suffered compensable harm and are entitled to recover actual damages, trebled damages, costs, and attorneys' fees.

## VIII. Relief Requested

WHEREFORE, Plaintiffs request that this Court:

f. Determine that this action may be maintained as a class action under Fed. R. Civ. P. 23(a), (b)(2), and b(3), and direct that notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to class members;

g. Enter an order declaring that Defendants' actions, as set forth in this Complaint, violate the FDCPA, the Pennsylvania FCEUA, and the Pennsylvania UTPCPL;

h. Enjoin all Defendants to cease engaging in debt collection practices, as set forth in this Complaint, that violate the FDCPA, the Pennsylvania FCEUA, and the Pennsylvania UTPCPL;

i. Award Plaintiffs and class members actual damages;

j. Award Plaintiffs and class members statutory damages pursuant to the FDCPA;

k. Award Plaintiffs and class members trebled damages pursuant to the Pennsylvania FCEUA and UTPCPL;

l. Award Plaintiffs their costs of suit, including reasonable attorneys' fees and expenses;

m. Grant such other and further relief as the Court may deem just and proper.

## IX. Jury Demand

Plaintiffs demand a trial by jury on all issues triable by a jury.

Respectfully Submitted,

September 5, 2025

*<u>/s/ David Nagdeman</u>*

David Nagdeman, PA Bar No. 327652
dnagdeman@langergrogan.com
Irv Ackelsberg, PA Bar No. 23813
iackelsberg@langergrogan.com
Langer, Grogan & Diver P.C.
1717 Arch Street, Suite 4020
Philadelphia, PA 19103
Telephone: (215) 320-5660

Kerry Smith, PA Bar No. 94473
ksmith@clsphila.org
Tamar Hoffman, PA Bar No. 332520
thoffman@clsphila.org
Thomas Ferrant, PA Bar No. 319002
tferrant@clsphila.org
Community Legal Services Inc.
100 N. 18th St. Ste. 3400
Philadelphia, PA 19103
Telephone: (267) 443-2675